UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SKINNER, INC., <br><br> Plaintiff, <br><br> v. <br><br> LUCHENG LI, SANJEEV KUMAR, DEEPA LUTHRA and JOHN DOES 1-50, <br><br> Defendants. | Civil Action No. |

## **INTERPLEADER COMPLAINT**

Plaintiff, Skinner, Inc. ("Skinner"), brings this Complaint in the Nature of Interpleader against Defendants Lucheng Li ("Li"), Sanjeev Kumar ("Kumar"), Deepa Luthra ("Luthra") and John Does 1 through 50, representing the unknown individuals or entities that provided suspicious funds to, for or on behalf of Li (collectively the "Doe Defendants") (collectively Li, Kumar, Luthra and Doe Defendants, the "Defendants").

Skinner is an auction house that in June of 2020 conducted an auction for a blue and white Yongzheng lotus-mouth vase (the "Vase"). Defendant Li was the winning bidder for the Vase with a hammer price of $1,330,000. However, Li did not timely pay the full invoice price to Skinner for the Vase, which includes charges for the hammer price, sales tax and a premium due to Skinner. Instead, Li caused or directed Kumar, Luthra and the unidentified Doe Defendants to make a multitude of suspicious payments to Skinner, purportedly on his behalf, for partial payment of the Vase. Skinner now has reason to believe these payments were made due to Li's wrongful or illegal conduct. Skinner now brings this interpleader action for resolution as to where or to whom these funds should be paid. In addition, Skinner seeks payment from Li for the damages incurred, including without limitation, reduced premium/commission fees, storage fees,

costs to re-sell the Vase, costs associated with processing, administering and holding the disputed funds, interest, and the costs and attorneys' fees associated with bringing this action.

## PARTIES

1. Skinner, Inc. is a Massachusetts corporation with a principal place of business located at 274 Cedar Hill Street, Marlborough, Massachusetts.

2. Defendant Lucheng Li is a citizen of China, who resides at 46 Ravenscroft Avenue Middlesbrough TS5 7QL, United Kingdom.

3. Defendants Sanjeev Kumar and Luthra Deepa are residents and citizens of Suwanee, Georgia. On information and belief, Mr. Kumar and Ms. Deepa are married to one another.

4. Defendants John Doe 1 through 50 are various unknown individuals, who sent money to Skinner for, on behalf of or at the direction of Li. Further investigation, including discovery from Li, will be required to ascertain the exact names and citizenship of these individuals, as this information is in the possession of Li.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction of this action pursuant to Fed. R. Civ. P. 22 and 28 U.S.C. § 1332, because there is diversity between Skinner and Defendants and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court also has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1335, statutory interpleader, because Skinner has possession of money with a value in excess of $500, and, based on information and belief, two or more adverse claimants of diverse citizenship are claiming and/or may claim to be entitled to such money. Skinner shall deposit all or a portion of the disputed funds at issue or with the Court upon the issuance of an appropriate

order from this Court directing the proper manner in which to do so. Contemporaneous with this Interpleader Complaint, Skinner is filing a motion seeking the Court's direction on how or where to pay the disputed funds into this Court. Also in said motion, Skinner seeks leave to holdback a portion of the disputed funds to compensate it for its costs, damages, and attorneys' fees, which it is entitled to recover.

7. This Court has personal jurisdiction over all Defendants pursuant to the long arm statute of Massachusetts, M.G.L. c. 223A § 3.

8. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) and (c)(3) as well as 28 U.S.C. § 1335 because a substantial part of the events giving rise to this action occurred in the Commonwealth of Massachusetts and the property at issue, namely funds totaling $1,486,267.66, is located in the Commonwealth of Massachusetts.

9. Venue and jurisdiction are also appropriate in this Court because Li agreed to be subject to personal jurisdiction in Massachusetts and to submit to the jurisdiction of the District of Massachusetts in the event a dispute arose regarding the transaction underlying this matter. The Conditions of Sale, to which Skinner and Li agreed to be bound, states, "The buyer/bidder agrees that any suit for the enforcement of this agreement may be brought, and any action against Skinner in connection with the transactions contemplated by this agreement shall be brought, in the courts of the Commonwealth of Massachusetts or any federal court sitting therein. The bidder/buyer consents to the nonexclusive jurisdiction of such courts and waives objections that it may now or hereafter have to the venue of any such suit." Conditions of Sale at ¶ 13, attached hereto at **Exhibit A**.

## FACUAL BACKGOUND

10. Skinner is a longstanding provider of auction and appraisal services for fine and decorative arts, jewelry, modern design, musical instruments, wine, and many other objects.

11. On or about June 18, 2020, Skinner conducted an auction for the Vase, which was designated as Lot 1059.

12. Li participated in the auction for the Vase and was the winning bidder, with a bid (also referred to as the hammer price) of $1,330,000.

13. All individuals who participate in auctions conducted by Skinner are required to agree to the Conditions of Sale in order to participate. *See* **Ex. A** at ¶ 11. Li also agreed to the Conditions of Sale via Skinner's online bidding platform.

14. The Conditions of Sale explicitly states, "All merchandise purchased must be paid for and removed from the premises **the day of the auction**." **Ex. A** at ¶ 4 (emphasis added).

15. If payment in full is not tendered on the day of the auction, then the purchaser is required to pay for any damages or losses incurred by Skinner, including without limitation, the difference in premium fees collected, interest, late fees, storage fees, returned check fees, handling fees, costs associated with re-selling the merchandise, attorneys' fees and costs. In addition, Skinner is authorized to cancel the sale. *See* **Ex. A** at ¶¶ 4 - 6.

16. Li agreed to the Conditions of Sale by participating in the bid for the Vase and by agreeing to the Conditions of Sale via Skinner's online bidding platform. **Ex. A** at ¶ 11.

17. On or about June 18, 2020, Skinner issued an Invoice to Li for $1,709,031.25, which includes the hammer price, a premium charge due to Skinner as detailed in the Conditions of Sale and sales tax. The Invoice is attached hereto at **Exhibit B**.

18. Despite agreeing to make payment for the amount listed on the invoice, Li did not pay for the Vase on the date of purchase.

19. After about a week of waiting for payment, Skinner contacted Li via email to remind him of his payment obligation and to determine whether Skinner would have to cancel the sale. Skinner informed Li in this communication that Skinner had the right to sell the Vase to the next highest bidder should he not immediately remit payment in full.

20. Li responded via email, stating first that he intended to pay "within a week." Li then sent a second message a short time later stating that he intended to make an immediate bank transfer.

21. Skinner responded via email to these communications from Li, stating that the Vase would be sold to the next highest bidder if full payment was not received by June 25, 2020.

22. On June 25, 2020, Li emailed Skinner claiming he had made wire payments to Skinner totaling $940,000 and that another wire would be forthcoming on June 29, 2020, in the amount of $668,500. The total amount of these promised payments Li claimed he would send is $1,608,500, which omits the $100,531.25 in sales tax charged on the invoice.

23. Without waiving any of its rights, Skinner awaited payment from Li. However, no payments were received by Skinner on June 25, 2020. Instead, wires totaling $1,000,000 were received on June 29 and 30, 2020.

24. The promised second payment of $668,500 never arrived. Instead, in the days after June 25, 2020, Skinner began receiving numerous payments by cash, check, money order and cashier's check from multiple unknown third parties, namely the Doe Defendants, in much smaller amounts ranging from $150 to $26,100. In total, Skinner received over 160 smaller dollar payments from Kumar, Luthra, and the Doe Defendants, a great many of which were made

in $1,000 increments (the "Suspicious Payments"). In total, Skinner received $286,267.66 in Suspicious Payments.

25. This large number of smaller dollar payments, received from unknown third parties, ostensibly at the direction of Li, caused Skinner to suspect Li of improper or unlawful conduct.

26. Skinner's suspicions were further raised when between June 30, 2020 and July 7, 2020, Defendants Kumar and Luthra contacted Skinner seeking a refund of $2,934 that they previously paid to Skinner. Defendants Kumar and Luthra informed Skinner that "a scammer" had directed the money to Skinner's account, and threatened legal action if Skinner did not return the funds immediately.

27. Additionally, one of the Suspicious Payments, in the amount of $26,000, was later returned for insufficient funds.

28. As of July 9, 2020, over 19 days after the auction closed, and well after the date full payment was due, Li paid or caused to be paid to Skinner, a total of $1,486,267.66, which includes the Suspicious Payments. Setting aside the troubling nature of the Suspicious Payments, this amount is still $222,763.59 less than the invoice price Li owed to Skinner.

29. Despite this suspicious activity, and the clear payment deficiency, Li communicated to Skinner in July that he overpaid Skinner by $111,940. This allegation had no basis in fact and is not supported by any of the payment records, even if the Suspicious Payments are included.

30. Despite this factually false allegation and the existence of the Suspicious Payments, on July 7, 2020, an attorney for Li contacted Skinner claiming Li had already paid

more than the purchase price to Skinner, demanded a refund of the alleged overpayment, and insisted that Skinner release the Vase to Li within 24 hours.

31. Later in July of 2020, after becoming alarmed by the Suspicious Payments, Li's conduct, and Li's breach of the Conditions of Sale, Skinner informed Li that the sale of the Vase had been cancelled pursuant to the Conditions of Sale, and that he is liable for damages to Skinner.

32. Skinner is currently in possession of $1,486,267.66, in total payments that Skinner believes were made by, or at the direction of, Li (the "Stake"), which includes the Suspicious Payments of $286,267.66.

33. Skinner believes that the multitude of cash, money order, check and cashier's check payments made by Kumar, Luthra and the Doe Defendants, coupled with the demands and threats from Li to quickly close the sale of the Vase, are indicative of a possible fraudulent scheme or other wrongful or illegal conduct on the part of Li.

34. Upon information and belief, including but not limited to the foregoing, and the communications Skinner received from Defendants Kumar and Luthra, additional Doe Defendants are likely to claim ownership over all or a portion of the Stake and make demand upon Skinner for return of these funds.

35. Li claims sole ownership over the Stake. Skinner is thus subject to double liability for the Stake, which remains in Skinner's possession.

36. Skinner is unable to ascertain the exact identity of the many Doe Defendants based on the information currently in its possession. Many of the payments were made by money order or cashier's check, making the source of the money very difficult to trace.

37. Li has admitted, through his attorneys, that he holds or has access to information that could identify the Doe Defendants, but has not shared this information with Skinner.

38. As a result, Skinner names the individuals and/or entities that made the Suspicious Payments to Skinner as Doe Defendants.

## COUNTS

### Count I - Interpleader

39. Skinner restates and incorporates the allegations set forth in Paragraphs 1 through 38 of this Interpleader Complaint by reference, as if set forth fully herein.

40. Skinner currently has possession of the Stake, which includes at least $286,267.66 in Suspicious Payments from Kumar, Luthra and the Doe Defendants.

41. Li claims he is entitled to the entire Stake.

42. Defendants Kumar and Luthra have claimed ownership over a portion of the Stake.

43. Skinner believes, based on foregoing, that additional Doe Defendants will claim ownership to all or a portion of the Stake.

44. Skinner contends that it has rights to a portion of the Stake to compensate for the damages caused by Li.

45. The claims and potential claims asserted and/or that may be asserted by the Defendants are adverse to each other and to the Stake.

### Count II – Breach of Contract

46. Skinner restates and incorporates the allegations set forth in Paragraphs 1 through 45 of this Interpleader Complaint by reference, as if set forth fully herein.

47.     Skinner and Li entered into a binding contract, the terms of which are set forth in the Conditions of Sale. *See generally* **Ex. A**.

48.     Li breached the Conditions of Sale by, among other things, failing to pay for the Vase in full on the day of the auction, failing to remove the Vase from Skinner's premises, failing to communicate honestly about his payment history and his intentions with regard to making payment in full, failing to acknowledge and accept the cancellation of the sale of the Vase and failing to fully and honestly disclose the sources of the Suspicious Payments.

49.     Li's multiple breaches have caused Skinner damages, including but not limited to: the difference in premium fees collected, interest, late fees, returned check fees, storage fees, handling fees, costs associated with re-selling the merchandise, attorneys' fees and costs, all of which Skinner is entitled to deduct from the Stake.

## REQUESTED RELIEF

WHEREFORE, Skinner respectfully requests that the Court issue an Order:

a. Allowing Skinner to deposit the Stake with the Court or with a person or entity duly authorized by the Court to receive the Stake in accordance with the proposal made in Skinner's contemporaneous motion for deposit of the Stake;

b. Awarding Skinner damages, including without limitation, its lost or reduced premium, interest, late fees, returned check fees, storage fees, handling fees, costs associated with re-selling the merchandise, and attorneys' fees and costs associated with bringing this action;

c. Allowing Skinner to collect its damages by retaining a portion of the Stake;

d. Compelling the Defendants to determine through interpleader their competing or potentially competing and adverse claims to the Stake;

e. Extinguishing with finality all claims that the Defendants have or may have against Skinner;

f. Restraining the Defendants from instituting or prosecuting, in this or any other State or Federal court, any proceeding against Skinner and/or its agents with respect to the Stake;

g. Awarding Skinner its reasonable attorney's fees and costs associated with filing this interpleader action; and

h. Granting Skinner such other and further relief as the Court deems just and proper.

    Respectfully submitted,

    Skinner, Inc.

    By Its Attorneys,

    */s/ Lauren J. Coppola*
    Lauren J. Coppola, Bar No. 666211
    Peter N. Foundas, Bar No. 681599
    ROBINS KAPLAN LLP
    800 Boylston Street, Suite 2500
    Boston, MA  02199
    Telephone:   617 267 2300
    lcoppola@robinskaplan.com
    pfoundas@robinskaplan.com

Dated:  July 24, 2020

37116246.1