UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SKINNER, INC.,
Plaintiff,

v.                                                                  CIVIL ACTION NO. 20-11402-MPK[1]

LUCHENG LI, MAOLIANG FANG,
Defendants.

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO RECONSIDER
THE COURT'S ORDER ON THE
PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT (#124).

KELLEY, U.S.M.J.

On March 3, 2023, the court dismissed on summary judgment defendants Lucheng Li's and Maoliang Fang's counterclaims for breach of the implied covenant of good faith and fair dealing (Counterclaim II) and for violation of Mass. Gen. Laws ch. 93A ("Chapter 93A") (Counterclaim III). (#119 (the "Summary Judgment Order")); *see also* #40 ¶¶ 63-85.  The court allowed defendants' counterclaim for breach of contract (Counterclaim I), *see* #40 ¶¶ 49-62, to proceed to trial and denied defendants' cross-motion for summary judgment on all of plaintiff Skinner, Inc.'s claims. (#119.)  Familiarity with the court's decision is presumed.

At the scheduling conference held on March 24, 2023, defendants informed the court that they intended to request reconsideration of the court's Summary Judgment Order and previewed their arguments. *See* #122.  The court allowed briefing, *see id.*, and defendants filed this motion

---

[1] With the parties' consent, this case was assigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (#61.)

1

on May 10, 2023, requesting that the court reconsider dismissal of their Counterclaims II and III, reconsider the court's denial of summary judgment as to Skinner's claims for breach of contract (Count I, against Fang; Count II, against Li), *see* #35 ¶¶ 40-47, and address in the first instance whether plaintiff is entitled to attorneys' fees under the terms of the Conditions of Sale ("COS"). (#124 at 1.) Skinner opposed. (#125.) For the following reasons, defendants' motion is denied.

I.   Legal standard.

"A federal district court has the discretion to reconsider interlocutory orders and revise or amend them at any time prior to final judgment." *Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000); *see* Fed. R. Civ. P. 54(b). "The Supreme Court, however, has cautioned that 'courts should be loath to reconsider orders in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.'" *Echavarria v. Roach*, No. 16-cv-11118, 2021 WL 4477433, at *2 (D. Mass. Sept. 30, 2021) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)) (alterations incorporated and additional quotations omitted). A motion for reconsideration is thus an "extraordinary remedy which should be used sparingly," *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (internal quotation marks and citation omitted), and should only be granted when the movant demonstrates "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." *Davis*, 89 F. Supp. 2d at 147. "A disagreement with the Court's decision is not a basis for reconsideration." *Lyons v. Fed. Nat. Mortg. Assoc.*, No. 1:18-cv-10365, 2019 WL 1961072, at *3 (D. Mass. May 1, 2019) (citing *Ofori v. Ruby Tuesday, Inc.*, 205 F. App'x 851, 852-53 (1st Cir. 2006)) (additional citation omitted).

Defendants do not claim that there has been an intervening change in law since the court's Summary Judgment Order, nor do they bring to the court's attention new evidence not previously available. *See generally*, #124. Defendants argue only that the court made manifest errors of law

in its Summary Judgment Order, *see* #119. *See Davis*, 89 F. Supp. 2d at 147 ("When faced with a motion for reconsideration, a district court must balance the need for finality against the duty to render just decisions.").

II. <u>Reconsideration of summary judgment on defendants' breach of the covenant of good faith and fair dealing counterclaim – Counterclaim II</u>.

By summary judgment, defendants had only two theories remaining to support their counterclaim for breach of the implied covenant: (i) Skinner agreed to modify its payment terms only to later change its mind without notice to defendants; and (ii) Skinner improperly included sales tax on invoices to defendants and refused to provide advice or information on how to remove it.[2] *See* #119 at 35; *see also* #67 at 13-16; #124 at 2. As to defendants' first theory, the court held that there was no evidence in the summary judgment record that Skinner was attempting to extract a better deal from defendants, attempting to terminate the agreement to profit from a better deal, or otherwise engaging in gamesmanship. (#119 at 36.) On defendants' second theory, the court held that there was no evidence Skinner was attempting to force defendants to pay sales tax when none was required; the parties did not dispute that defendants did not provide the paperwork necessary to deduct sales tax until July 7, 2020; and it was uncontroverted that Skinner could not remove sales tax from the invoice without proper documentation.[3] *Id.* at 36-37. Defendants thus

---

[2] Defendants concede that they no longer pursue the third theory the court allowed to proceed over Fed. R. Civ. P. 12(b)(6) objection, namely that Skinner failed to properly account for payments that Mr. Fang caused to be made. *See* #124 at 5 n.5.

[3] The court also noted that "despite defendants' claim that the erroneously added sales tax complicated their internal payments, there is no evidence that the defendants ever planned to pay the sales tax." (#119 at 37.) Defendants assert, without citation to the record, that this "is contradicted by the record, as noted by the Court, that establishes that the Defendants believed that they had paid $1,608,500.00 which is the full amount plus the sales tax . . ." (#124 at 6-7.) It is undisputed, however, that the total invoice, including sales tax, amounted to $1,709,031.25 "which included a 'sales tax' charge of $100,531.25" – i.e. $1,608,500. (#88-2 ¶ 25 (defendants' statement of material facts.)) Defendants then argue, in a footnote, that the court did not credit Mr. Li's testimony indicating that they "proceeded as if the entire $1,720,440.00 [sic] was due." (#124 at

3

failed to meet their evidentiary burden, and the court allowed summary judgment on defendants' implied covenant counterclaim. *Id.* at 38. Defendants now argue that in allowing summary judgment on their counterclaim the court made impermissible findings of fact in the face of contradictory record evidence, *see* #124 at 2, and misapplied Massachusetts law in its analysis of the elements of defendants' counterclaim, *see id.* at 3-5.

The court disagrees. As a threshold matter, defendants' motion is largely a "rehash[]" of the arguments set forth in its summary judgment papers, which is "not enough to merit reconsideration."[4] *Davis*, 89 F. Supp. 2d at 147-48.

Even if the court reconsiders defendants' arguments, however, the court's ruling is the same. Defendants argue that, along with evidence of Skinner's purportedly dilatory

---

7 n.7.) Although it is undisputed that defendants never owed $1,720,440 to Skinner, *supra*, and that Mr. Li's counsel later attempted to collect the purported overpayment, #87 ¶ 90; #107 (undisputed), the court did not credit Mr. Li's testimony as to defendants' intentions regarding the sales tax payment. *See* #88-2 ¶ 59 ("[T]he defendants proceeded as if the entire $1,720,440.00 was due." (citing #89 at App. 693).) That is because, notwithstanding counsel's argument in their statement of material facts, Mr. Li's testimony does not go to defendants' intent. *See* #89 at App. 693 ("Q: So, you're not sure if you or Mr. Fang ever paid the sales tax on the invoice? A: I cannot speak for him. But I was saying that . . . They were lot of proofs to show that payments were being made, more than . . . $1.7 million, which is enough to cover whatever amount on the invoice."). In any event, whether defendants did or did not intend to pay the sales tax is immaterial to the court's holding on this counterclaim.

[4] Moreover, defendants' argument for reconsideration is predicated, at least in part, on misstatements of the summary judgment record. For example, defendants argue that "[t]he undisputed facts establish that Skinner's agent, Karen Keane, directed Skinner employee Mr. [Debourdes] Jackson not to respond to Defendants' email of July 7, 2020 providing the proper sales tax documentation" and cite to #89 at App. 519. (#124 at 3.) Although the cited email reflects Ms. Keane instructing Mr. Debourdes Jackson not to respond to Mr. Li, the email does not reference sales tax waiver documentation. (#89 at App. 519.) Defendants also assert, "[m]ost importantly, and not noted by the Court in its *Memorandum and Order*" that it is "undisputed" that "neither Skinner's agent, Ms. Sutton, nor any other Skinner agent responded to the Defendants before the sale was formally cancelled on July 10, 2020, 7 days after the sales tax waiver was provided by Defendants" and cite to #119 at 15 (i.e. the court's Summary Judgment Order). (#124 at 3.) It is undisputed, however, that defendants did not provide the requested sales tax waiver documentation until July 7. *See, e.g.*, #89 at App. 493; *see also* #119 at 11.

communications as to the sales tax waiver documentation and confirmation of received funds, the issue of material fact as to waiver and/or modification entitles defendants to

> at least a jury trial on the implied covenant issue, as the jury could find that Skinner waived the same-day payment requirement entitling the Defendants to pay late, accepted the late payments and prodded the Defendants to keep the payments coming. When it decided to cancel the sale, Skinner should have notified the Defendants that the waiver was being revoked, but instead instructed Defendants to make no further payments and canceled the sale without providing the Defendants an opportunity to complete its performance.

(#124 at 3.) Defendants essentially articulate here their breach of contract claim, which the court allowed to proceed to trial. #119 at 43-44 (noting that the "material dispute of fact as to whether Skinner waived its rights under or otherwise modified the COS" "keeps defendants from winning [their breach of contract counterclaim] at this stage just as it does plaintiff"); *see id.* at 34-35. A breach of the implied covenant, however, requires at least "a lack of good faith" in performing the contract's terms. *T.W. Nickerson, Inc. v. Fleet Nat. Bank*, 924 N.E. 2d 696, 704 (Mass. 2010) ("There is no requirement that bad faith be shown; instead, the plaintiff has the burden of proving a lack of good faith."). In its Summary Judgment Order, the court held that defendants did not meet their burden to show any evidence of lack of good faith on Skinner's part that would support a breach of implied covenant, *see* #119 at 35-38. Defendants do not bolster their showing here with any new evidence.

Instead, defendants argue that the court made "impermissible findings of fact" when it held that defendants failed to meet their evidentiary burden. That is not what the court did. On summary judgment a court must review the record and determine whether a dispute of material fact exists; "[a] dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Cherkaoui v. City of Quincy*, 877 F.3d 14, 23-24 (1st Cir. 2017) (internal quotation marks and citations omitted). "'Mere allegations

are not entitled to weight in the summary judgment calculus'"; instead the "'nonmoving party must . . . marshal sufficient evidence to show that a genuine issue of material fact exists.'" *López-Hernández v. Terumo Puerto Rico LLC*, 64 F.4th 22, 26 (1st Cir. 2023) (quoting first, *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 2 (1st Cir. 2010), then *Cherkaoui*, 877 F.3d at 24) (alterations incorporated). "Speculation" and "argumentation" are not enough at this stage. *Id.* (quoting *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56-57 (1st Cir. 2011)) (internal quotation marks omitted). In its Summary Judgment Order, which decided cross-motions filed by both parties, the court reviewed the record in a light most favorable to the non-moving party—in this case, defendants—and, seeing no evidence and only argument as to Skinner's alleged lack of good faith, held that no reasonable jury could find in defendants' favor on the present record.

Defendants claim this was an error. They claim that Skinner's repeated "demands" for sales tax, "willful[]" refusal to respond to defendants' requests for information regarding sales tax, and "repeated[] refusal to respond to the Defendants even after Skinner received the proper documentation from Li" create a material dispute of fact as to whether Skinner was "attempt[ing] to force the Defendants to pay the sales tax." (#124 at 5.) The issue for defendants is that there is no record evidence to support their argumentative language. There is no evidence that Skinner "demanded" sales tax, only that Skinner sent—in response to Mr. Li's requests—updated invoices that continued to include sales tax up to and one day past when Mr. Li sent Skinner the required sales tax waiver documentation; there is no evidence that Skinner "willfully" refused to provide sales tax waiver information;[5] and there is no evidence that Skinner "repeatedly" refused to

---

[5] Although defendants construe Mr. Li's emails as requests for information or questions regarding the necessary sales tax waiver documentation, the evidence shows that Mr. Li repeatedly requested that Skinner remove sales tax from the invoice because he claimed that the Vase was to be shipped

6

respond to Mr. Li after he provided the sales tax waiver information[6]—there exists only one email in which Ms. Keane instructed Mr. Debourdes Jackson not to respond to Mr. Li pending an investigation into defendants' payments by the company's CFO,[7] followed by numerous communications between counsel for defendants and Skinner, respectively. Other than defendants' arguments and allegations, which are not enough at this stage, *see Cherkaoui*, 877 F.3d at 23-24, there is no evidence in the record of a lack of good faith on Skinner's part. *See* #119 at 35-38.

Finally, defendants claim the court misapplied the law of implied covenants of good faith and fair dealing by requiring defendants to demonstrate bad faith or gamesmanship. They cite a

---

out of the country. *See, e.g.*, #88-2 ¶¶ 40, 42, 49, 55; #89 at App. 475, 469, 497. *But see* #89 at App. 692 (Mr. Li's testimony that he "asked them to examine the sales tax for us," but Skinner "never give us any answer . . . they have never asked me to provide any information or documents for or the reason why. I asked them for it but there was no response from them."). Other than his own testimony, #89 at App. 692, the court sees no evidence in the record demonstrating that Mr. Li affirmatively requested the sales tax waiver information, except possibly Mr. Li's request for "the details for payment instruction for deposit and the final bills which need to take off the sales tax," about which Mr. Li and Mr. Debourdes Jackson apparently spoke earlier. *See* #89 at App. 497. In light of the record evidence indicating that Skinner provided the necessary information with the original invoice, *see* #87 ¶ 31; #107 (undisputed); *see also* #119 at 5, which is supported by the uncontroverted fact that Mr. Li eventually did send the correct paperwork notwithstanding Skinner's silence on the issue, *see* #88-2 ¶ 55, the court sees little to no evidence that Skinner knew Mr. Li needed additional information, let alone that Skinner "willfully" refused to provide it.

[6] As noted *supra*, defendants' argument seems to be based on an erroneous reading of the summary judgment record. It is undisputed that Mr. Li did not provide the sales tax waiver documentation until July 7, 2020, *see* #88-2 ¶ 55; #89 at App. 493; *see also* #119 at 11, on which date Mr. Li began communicating with Skinner through counsel, *see* #87 ¶ 90; #107 (undisputed); *see also* #119 at 11.

[7] It is unclear from the record whether Mr. Li had sent the sales tax waiver documentation before or after Ms. Keane instructed Mr. Debourdes Jackson not to respond. *Compare* #89 at App. 519 *with* App. 493. The timing does not affect the court's decision, but highlights the immateriality of defendants' (erroneous) argument that the court "suggest[ed] it was . . . proper for Skinner to cancel the sale" because "Skinner and/or its counsel and bank and already begun an investigation into defendants' payments." #124 at 5. The court intended no such suggestion.

number of cases for the proposition that "actions inconsistent with the expectations of the parties" are enough to establish a basis for a breach of the implied covenant claim. (#124 at 4.) All of defendants' cases, however, include a lack of good faith—evidenced by either gamesmanship or bad faith—or a material intervening change in circumstances that rendered the contract impracticable as written; none of the cases support a ruling in defendants' favor where there is no evidence that Skinner lacked good faith in its performance under the COS.[8] Although defendants are correct that they need not show bad faith or gamesmanship to prove breach of the implied covenant, as their own cited caselaw indicates, either would be evidence of a lack of good faith, which defendants must show and on the present record do not.

---

[8] *See Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 805 N.E.2d 957, 964 n.5, 965 (Mass. 2004) (reversing directed verdict of breach of the implied covenant of good faith and fair dealing where property owner had no duty to reallocate price for right of first refusal holder upon receipt of unsolicited above-market offer to buy; and noting that, to prove breach of the implied covenant "a plaintiff must show a lack of good faith and is not required to show that the defendant acted in bad faith," "collusion" may violate the covenant in the right of first refusal context, and "[i]naction amounts to a lack of good faith in contract performance only when the contracting party had a duty to act"); *Robert & Ardis James Found. v. Meyers*, 48 N.E.3d 442, 450 (Mass. 2016) (affirming finding that defendant had breached the implied covenant where defendant, "[t]aking an unwarranted view of his contractual rights, . . . sought to achieve for himself a better deal than the sharing of risks and rewards for which the judge found he had originally bargained"); *Chokel v. Genzyme Corp.*, 867 N.E.2d 325, 329, 330 n.5 (Mass. 2007) (affirming dismissal of breach of the implied covenant claim where directors timed stock exchange to profit from then-nonpublic information in line with articles of organization that allowed directors to exchange shares "at any time," and the complaint contained "no allegations that the directors withheld information with the intention of depressing the price of [the company's] stock"); *Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806, 820-21 (Mass. 1991) (affirming finding of breach of implied covenant where trial judge found that "a number of the positions and actions taken by [defendant] . . . were designed to force financial concessions from [plaintiff] . . . apply pressure on [plaintiff] . . . [and] sweeten the deal"); *see also Cadle Co. v. Vargas*, 771 N.E.2d 179, 179, 184 (Mass. App. Ct. 2002) (affirming finding of breach of the implied covenant of good faith and fair dealing in the "unusual situation appearing of record" in which "[u]nforeseen, unusual circumstances, which arose after a guaranty of bank loans was entered into, made enforcement of the literal terms of the guaranty offensive to common sense and incompatible with good faith and fair dealing").

III.     Reconsideration of summary judgment on defendants' violation of Chapter 93A counterclaim – Counterclaim III.

In its Summary Judgment Order, the court held that there was insufficient evidence in the record to create a dispute of material fact that Skinner behaved deceitfully or with bad faith to support a finding that plaintiff violated Chapter 93A. (#119 at 39.) Defendants disagree and claim there is such evidence in the record. (#124 at 7-13.)

Despite defendants' minimal briefing on the issue at summary judgment,[9] the court reviewed the record thoroughly in making its original decision, *see generally* #119. Although the parties clearly disagree as to who owed whom what amount under the terms of the COS, there is

---

[9] Defendants' original briefing on its Chapter 93A counterclaim spans at most four paragraphs, *see* #88-1 at 32-33 (defendants' memorandum in support of its motion for summary judgment), #89 at 20 (defendants' opposition to plaintiff's motion for summary judgment, in which defendants "incorporate its argument contained in Section III of [#88-1] and requests that the Court deny Skinner's motion based on the arguments therein"), #115 (defendants' reply in support of its motion for summary judgment, in which defendants did not reference Chapter 93A directly). Defendants' argument in its memorandum in support of its motion for summary judgment, upon which its opposition to Skinner's motion relies, reads in full:

> The undisputed evidence establishes that Skinner canceled the sale of the vase for an improper and insufficient reason and subsequently exercised control over the defendant's money, essentially holding it hostage unless the defendants agreed to pay Skinner's legal fees, even though Skinner had no right to those fees, contractual or otherwise. This is the type of behavior that has been recognized by the Courts as violating G.L. c 93A, §11. *Exhibit Source, Inc. v. Wells Ave. Bus. Ctr., LLC.* 94 Mass. App. Ct. 497 (2018) (Liability under G.L. c 93A, § 11 found where evidence established that "this was not a dispute over the application of a contract, but rather was a considered and intentional exercise of control over the defendants' property – a strategy employed in the hope that some or all of the property could be, ultimately, taken by Skinner without right to do so).

(#88-1 at 32-33). Defendants did not cite to their statement of material facts or the summary judgment record. *Id.* In contrast, here defendants devote nearly seven pages to their Chapter 93A counterclaim arguments, and include citations to the record. *See* #124 at 7-13. The court reminds defendants that motions for reconsideration are "'not the venue to undo procedural snafus or permit a party to advance arguments it should have developed prior to judgment, nor are they a mechanism to regurgitate old arguments previously considered and rejected.'" *In re Buscone*, 61 F.4th 10, 35 (1st Cir. 2023) (quoting *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014) (alternations incorporated)).

9

no evidence in the record of bad faith on Skinner's part that would support a Chapter 93A claim against it. *See infra* section V (discussing Skinner's entitlement to legal expenses under the COS); *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 56 (1st Cir. 1998) ("Where there is a good faith dispute over whether payment is actually owed, and that dispute is clearly articulated, it . . . appears there is no Chapter 93A liability."); *see also Physician Ins. Agency of Mass., Inc. v. Investors Capital Holdings, Ltd.*, No. 0303597, 2005 WL 3722373, at *4-5 (Mass. Super. Ct. Dec. 30, 2005) (same). Upon defendants' request, the court re-reviewed the parties' summary judgment briefing and the underlying record, and sees no reason to disturb its decision, *see* #119 at 38-39.

IV. Reconsideration of summary judgment on plaintiff's breach of contract claims – Claims I & II.

The court denied summary judgment on both defendants' and Skinner's breach of contract claims, holding that there remains a dispute of material fact as to whether Skinner waived or otherwise modified the terms of the COS to allow for late payments. (#119 at 22-24, 34-35, 40-41.) Both parties' claims are thus headed to trial.

Nevertheless, defendants argue, as they did at summary judgment, that there is no material dispute of fact as to whether Skinner modified the COS, and so the court should rule in their favor and dismiss Skinner's breach of contract claim. (#124 at 14-15.) "Mere disagreement with a judicial decision," however, "is not an adequate basis for reconsideration." *Heng Ren Inv. LP v. Sinovac Biotech Ltd.*, 609 F. Supp. 3d 17, 19 (D. Mass. 2022) (citing *Ofori*, 205 F. App'x at 852-53). The court will not disturb its decision on these counts.

V. Attorneys' fees under the COS.

Defendants ask the court to consider and rule on their argument that Skinner is not entitled to attorneys' fees in this litigation under the terms of the COS. #124 at 13-14; *see* #88-1 at 26-27 ("The plaintiff argues its entitlement to attorney's fees in this litigation, but the relevant language

10

in the Conditions of Sale allow for the recovery of Costs of Sale only."). As the court recognized from the parties' summary judgment briefing, Skinner does not seek attorneys' fees and costs in this litigation under the terms of the COS; Skinner seeks such expenses in connection with its Chapter 93A claim. (#125 at 11-12.) The court already noted in the Summary Judgment Order that such claims are proper under the statute. (#119 at 42 n.28.)

It is unclear from defendants' briefing whether they also challenge Skinner's claim to legal fees "incurred in dealing with Defendants' lawyers pre-suit, investigating the need for a second sale, and the pre-litigation investigations as to the fraudulent and suspicious payments," which, to the extent that those expenses do not constitute litigation-related costs, plaintiff claims would qualify as "costs of sale" under paragraph six of the COS. *See* #125 at 11-12; *see also* #91-1 ¶ 6. Defendants' arguments and cited authority all involve attorneys' fees and costs incurred in litigation, not business- or transaction-related legal expenses. *See* #124 at 13-14; #88-1 at 26-27, and cases cited.[10] This issue is not yet fully briefed, so the court declines presently to rule on it.

---

[10] *Preferred Mut. Ins. Co. v. Gamache*, 686 N.E.2d 989, 991-92 (Mass. 1997) (allowing insured to recover reasonable attorneys' fees and expenses accrued in separate third-party action that insurer refused to defend, and if insurer found to have violated its duty to defend, holding insurer liable for attorneys' fees and expenses in civil action at bar); *Police Comm'r of Boston v. Gows*, 705 N.E.2d 1126, 1128-30 (Mass. 1999) (affirming trial court's award of attorneys' fees compensating plaintiff for needless litigation, but vacating fee award related to claims on which plaintiff did not prevail); *Judge Rotenberg Edu. Ctr., Inc. v. Comm. of the Dep't of Mental Retardation (No. 1)*, 677 N.E.2d 127, 467-70 (Mass. 1997) (vacating and remanding award of attorneys' fees where no statutory authority expressly allowed litigation and/or post-judgment expenses against the Commonwealth as a defendant under Mass. R. Civ. P. 54(d)); *Hannon v. Original Gunite Aquatech Pools, Inc.*, 434 N.E.2d 611, 619-20 (Mass. 1982) (reversing and remanding award of litigation-related attorneys' fees following trial where certain fees and expenses did not fall within parties' contractual agreement, and defendant was not entitled to fees against consumer under Chapter 93A); *Trs. of Tufts Coll. v. Ramsdell*, 554 N.E.2d 34, 36-37 (Mass. App. Ct. 1990) (holding state law holding borrower liable for fair and reasonable attorneys' fees not preempted by federal law governing Perkins student loans, and affirming trial court's reduction of college's contingent fee related to its enforcement of a promissory note in litigation); *K.G.M. Custom Homes, Inc. v. Prosky*, 10 N.E.3d 117, 120, 126-27 (Mass. 2014) ("We . . . conclude that the judge erred in awarding [plaintiff] attorney's fees incurred in litigating this suit where the liquidated damages

VI.  Conclusion.

For the reasons stated above, defendants' motion to reconsider the court's order on the parties' cross-motions for summary judgment (#124) is denied.

July 7, 2023

/s/ M. PAGE KELLEY
M. Page Kelley
Chief United States Magistrate Judge

---

clause of the agreement only contemplated attorney's fees incurred in connection with the underlying transaction."); *Penney v. First Nat. Bank of Boston*, 433 N.E.2d 901, 906 (Mass. 1982) (affirming award of attorneys' fees to bank where note provided that debtor would pay all costs of collection and enforcement on default, and defense of plaintiff's claims in litigation was essential to the collection process).